CALOGERO, Justice.
Appellant was charged with armed robbery. He was tried by jury on September 10, 1975 and convicted of simple robbery. He was sentenced to serve four years in the St. Landry Parish jail.
On February 7, 1975 defendant and his companion, one Bobby Joe Vidrine, were drinking at Flossie’s Bar. Defendant began talking to the victim, Burt Olivier, concerning the possibility of his procuring a girl for Olivier for fifteen dollars. Olivier, Vidrine and defendant then left the bar in Vidrine’s car allegedly to pick up the girl. After a short time Vidrine, the driver, pulled off the main road onto a side road, stopped the car and then pulled a knife. Vidrine demanded and received Olivier’s money. It amounted to approximately seventy dollars. After driving some distance Olivier was let out of the car. Vidrine and defendant then drove to another bar where the two of them split the money.
Defendant gave an inculpatory statement to the police after his arrest and booking in which he admitted essentially all of the foregoing facts with the insignificant exception that it was not him but his companion Vidrine who proposed to Burt Olivier that they find him a woman. At the trial, defendant took the stand and testified essentially as hereinabove related.[1] He contended, however, that he made no prearrangement to rob Olivier; that he was unaware of Olivier’s intentions in this regard until Olivier turned off the main road; that he in effect was not a party to Vidrine’s robbing Olivier; that he said nothing during the course of the robbery except that at its conclusion he gave Olivier helpful advice about how to find his way back to Flossie’s. He acknowledged, just as he had admitted in the statement given to the police, that he received half of the money taken from the victim. In his testimony on direct and on cross-examination, he seemingly gave two differing reasons, or excuses, for having done so: that Vidrine had the knife (inferentially that he feared for his safety) and that he was intoxicated.
On appeal defendant relies upon two assignments of error for reversal of his conviction.
ASSIGNMENT OF ERROR NO. 1.
Defendant was arrested in Lafayette at his place of employment by Detective Donald Rills who, coincident with the arrest, read him his Miranda rights. Detective Rills apparently did not attempt to question defendant then or during the trip from Lafayette to Opelousas. While Detective Rills was having him booked at the St. Landry Parish Sheriff’s Office, Rills again read him his rights at which time, while signing a “waiver of rights” form (actually simply an acknowledgement that his rights had been read to him) defendant advised Detective Rills that he did not want to talk to him or discuss anything with him. Defendant did not express a desire to have counsel. Officer Rills then desisted from questioning defendant, but apparently when the booking was completed, turned defendant over to Detective Larry Ze-rangue. Zerangue thereupon read him his rights and took him into his office where within the ensuing thirty minutes defendant gave the statement which he later repeated at trial, in substantially all significant particulars.
There seems to be no question but that the written and signed statement given to Officer Zerangue by defendant was entirely free and voluntary.
Detective Zerangue testified that he had not been told of the Miranda reading at the time of the booking nor of defendant’s response thereto. Defendant moved to suppress the inculpatory statement.
*570 Only the testimony of Officers Rills and Zerangue was presented in connection with the statement’s admissibility both on the motion to suppress prior to trial and on the predicate at trial outside the presence of the jury.
Appellant relies upon language contained in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,1627-28,16 L.Ed.2d 694 (1966) and the recent United States Supreme Court decision, Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). He contends that he expressed a desire to remain silent to Detective Rills and that accordingly the subsequent interrogation by Detective Zerangue was impermissible. In Miranda the Supreme Court said:
Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.
In Michigan v. Mosley, supra, the Supreme Court had to construe the foregoing Miranda language and did so by concluding first of all that Miranda had not established a pro se proscription of indefinite duration upon any further questioning once a person in custody has indicated a desire to remain silent. They went on to conclude that “the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his ‘right to cut off questioning’ was ‘scrupulously honored.’ ” And, of course, in that case they found that Mosley’s right to cut off questioning had been scrupulously honored, notwithstanding that a second officer, several hours after a refusal to give a statement, quizzed the defendant relative to a different crime.
Were we to conclude that the defendant Guillory had, upon being advised of his Miranda rights, invoked his fifth amendment privilege by expressing to Detective Rills that he wished to remain silent and give no statement to the police concerning the matter which prompted his arrest, we would be inclined to find this case distinguishable from Michigan v. Mosley, supra, and the statement constitutionally impermissible. The two readily apparent differences between these facts and those in Mosley are that the second officer’s interrogation came almost immediately after the witness’ response to the first officer, and the inquiry of each of the officers focused on the same criminal incident.
However, as we view the evidence of the in-custody interrogation in the instant case, we conclude that defendant did not in fact, in response to the Miranda warnings, invoke his fifth amendment privilege by expressing a desire not to make a statement or a desire to remain silent. The only testimony on this point, the testimony of Officer Rills, was to the effect that defendant did not desire to speak with Officer Rills about anything.
In effect we are here agreeing with the state’s contention that defendant quite willingly gave a statement to Officer Zerangue, whom he had known for some three years, but insisted upon not speaking with Officer Rills.[2] The state’s apparent effort to develop more specific reasons for this attitude on the part of defendant was foreclosed when the Court maintained a defense objection (“irrelevant and immaterial”) to a question put to Officer Rills.[3]
Defendant’s assignment of error number one is without merit.
*571 ASSIGNMENT OF ERROR NO. 2.
Bobby Joe Vidrine, defendant’s alleged accomplice (he had earlier pled guilty to the same armed robbery), was testifying about a conversation he overheard between defendant and the victim Olivier at Flossie’s Bar. He said that he overheard defendant tell Olivier that he could fix him up with a woman for fifteen dollars and that the woman was in Opelousas. At that point the prosecutor asked, “What at that time did you understand that statement to mean?” Vidrine responded, “get the boy out of there and get his money.” The prosecutor then asked why, and he said “because I know him. He’s that way.”
At this point defense counsel asked for a mistrial because “he’s calling for an opinion.” He also argued that the witness’ statement was totally improper and that an admonition to the jury would be insufficient to overcome the improper remark.
The court refused to grant a mistrial but nonetheless did admonish the jury at great length to disregard the witness’ response.
Pretermitting whether the witness’ response was impermissible — there is little doubt that it was prejudicial for at the least it represented a communication by defendant to his companion indicating complicity — an admonition under Article 771 of the Code of Criminal Procedure if deemed by the trial judge sufficient to assure defendant a fair trial is adequate response to defendant’s mistrial motion. The trial judge did not abuse his discretion in responding as he did to the motion.
Assignment of error number two is not meritorious.
For the foregoing reasons, defendant Guillory’s conviction and sentence are affirmed.

. He did, however, confirm Vidrine’s trial testimony by stating that he had done the talking with Olivier inside the bar.

. Officer Rills testified “he didn’t want to talk to me, said he didn’t want to discuss anything with me, so that was it.”

. The question was “Is it not common practice, Mr. Rills, that some defendants or some suspects will talk to one detective and not another?”