394 So.2d 1204 (1981)
STATE of Louisiana
v.
Leslie Kyle ADAMS.
No. 80-KA-1702.
Supreme Court of Louisiana.
February 4, 1981.
*1206 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard K. Knapp, Jr., Dist. Atty., Evelyn Oubre, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Nick Pizzolatto, Jr., Caskey & Pizzolatto, Gregory D. Lyons, Lake Charles, for defendant-appellant.
E. L. GUIDRY, Jr., Justice Ad Hoc.[*]
Defendant, Leslie Kyle Adams, was charged with the crime of aggravated rape, a violation of R.S. 14:42. A jury of twelve found the defendant guilty as charged. Following his conviction, the defendant was adjudged a habitual offender pursuant to the provisions of the Louisiana Habitual Offender Law, La.R.S. 15:529.1, and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[1] The defendant assigns twenty-seven (27) errors for reversal of his conviction and sentence.

FACTS
The defendant was convicted of the aggravated rape of Angela Beth Carter, his five year old stepdaughter. The record discloses the following facts. On August 4, 1979, Mrs. Pamela Adams, wife of the defendant and mother of the victim, was employed at a convenience store in Lake Charles, Louisiana. Mrs. Adams worked the 3:00 p. m. to 11:00 p. m. shift that evening. At approximately 9:30 p. m., the defendant arrived at the store accompanied by the victim whom defendant cared for while her mother worked. Mrs. Adams observed the child, uninjured and sleeping, in the backseat of defendant's vehicle. Upon realizing that the defendant had been drinking, Mrs. Adams suggested that he and Angela go home. The defendant appeared to comply with her request. At approximately 10:30 p. m., Mrs. Adams, concerned for her daughter's welfare, received permission to leave the store early and proceeded home. Arriving at her residence, Mrs. Adams discovered that neither the defendant nor the young child were home. At midnight that same evening, Mrs. Adams returned to the store to determine if the defendant and her child had been by the store. She observed the defendant in the store's parking lot and noted that he appeared disgruntled and angry. She attempted to enter defendant's vehicle, however the accused blocked her entry and drove off accompanied by the victim. Mrs. Adams noted that the child was in the backseat of the vehicle. Mrs. Adams approached Lake Charles Police Officer W. E. Bushnell early the following morning and requested that he locate her husband and child. The officer found the defendant at the Trailways Bus Station at about 3:30 a. m. on August 5, 1979. Officer Bushnell *1207 noted that the child was in the backseat of defendant's vehicle, however, due to his vantage point, could not determine if the child was injured. Defendant's vehicle was later discovered parked on a Lake Charles street on the morning of August 5, 1979 with the defendant asleep in the front seat of the vehicle and the victim asleep in the backseat. Evidence adduced at trial indicated that the victim was injured and bleeding at this time. Defendant accompanied by the victim arrived at the trailer home of Pamela Arabie at 12:00 noon on August 5, 1979. Ms. Arabie discovered young Angela bleeding from the vaginal area with dried blood on her arms, legs and clothing. Shortly thereafter, a neighbor arrived at the Arabie trailer and defendant was persuaded to take the child to a hospital. At the hospital, the examining physician concluded that the child's injuries were consistent with rape. Subsequently, the accused was arrested by the police in connection with the offense.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
Defendant contends that the trial court erred in denying his motion for a change of venue. In addition, defendant alleges error on the part of the trial court in refusing defense counsel's request for additional time to gather witnesses to testify in support of defendant's motion.
La.C.Cr.P. art. 622 provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
In order for a defendant to be entitled to have his trial moved to another parish he must prove more than a mere knowledge by the public of facts surrounding the offense. Defendant's burden of proof is to show the existence of such prejudice in the collective mind of the community that a fair trial is impossible. State v. Sonnier, 379 So.2d 1336 (La.1980); State v. Matthews, 354 So.2d 552 (La.1978); State v. Sheppard, 350 So.2d 615 (La.1977). The granting or denial of the motion for change of venue rests within the sound discretion of the trial judge, and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. Sheppard, supra; State v. Bennett, 341 So.2d 847 (La.1976).
In State v. Bell, 315 So.2d 307 (La. 1975) this court discussed those relevant factors which should be considered when determining the propriety of granting defendant's request for a change of venue. Such considerations include (1) nature of pre-trial publicity and the particular degree to which it has circulated in the community; (2) the connection of government officials with the release of the publicity; (3) the length of time between the dissemination of the publicity and the trial; (4) the severity and notoriety of the offense; (5) the area from which the jury is to be drawn; (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and, (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire.
Defendant called representatives of the Lake Charles media to testify regarding publicity surrounding the instant offense. Testimony of witnesses indicated that the local television station and two area newspapers did not provide an unusual amount of publicity concerning the offense. Most of the news reports relative to the crime were published in close temporal proximity to the offense and defendant's arrest or during the selection of the jury and commencement of trial approximately six months later. Presumably, those news accounts appearing during the selection *1208 process were not read or observed by the jurors. There was no testimony indicating any undue connection between government officials and the dissemination of publicity. The area from which the jury was drawn was a fairly populous parish of over 145,000 people. While the heinous nature of the offense cannot be denied, its notoriety was limited. Testimony received at the hearing failed to substantiate defendant's claim that a fair and impartial trial in Calcasieu Parish was impossible.
Defendant challenges the trial court's denial of his request for additional time to "round up" citizens in the community in order to sustain his venue request. This Court has previously authorized the "dry run voir dire" as a legitimate method of exploring community prejudice and pre-trial publicity. In the "dry run voir dire", potential jurors are called for questioning to determine the nature and extent of publicity and the community's attitude toward the defendant. See State v. Bell, supra. Once this process is completed, if the motion for a change of venue is denied, the true voir dire begins.
In the instant case, the defendant via his request for additional time was apparently attempting to conduct "dry run voir dire". At the time of defendant's motion, the jury had already been selected. The testimony of witnesses called by defense counsel clearly indicated that the instant case had not been the subject of extensive pre-trial publicity. Further, the hearing on the motion was scheduled for the day following defendant's request, thus the trial judge concluded that defense counsel had ample opportunity to gather all of the witnesses he needed to prove the validity of his request for a change of venue. We conclude that it was not unreasonable to deny defendant's request for a continuance under the circumstances and discern no abuse of discretion on the part of the trial court.
Defendant's assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER 5
Defendant contends that the State failed to prove the three essential elements of the instant offense, specifically, (1) corpus delicti, penile penetration by the defendant of the victim's vagina; (2) venue in Calcasieu Parish; and, (3) the identity of the perpetrator.
The defendant was convicted of the aggravated rape of his five year old stepdaughter, a violation of La.R.S. 14:42 which provides in pertinent part:
"Aggravated rape is a rape[2] committed where the anal or vaginal sexual intercourse is deemed without the lawful consent of the victim because it is committed under one or more of the following circumstances:
* * * * * *
(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense."
Our court, in reviewing the sufficiency of evidence supporting a conviction, is governed by the standard of review enunciated in the U. S. Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also, State v. Holmes, 388 So.2d 722 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980). This standard provides that the reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, supra.
In the instant case, the State's case was based entirely upon circumstantial evidence. The victim did not testify. La.R.S. 15:438 provides, "The rule as to circumstantial evidence is: assuming every fact to be proved, that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
The evidence at trial established that approximately one week prior to the offense, *1209 the victim had expressed apprehension at being left alone with the defendant. Further, the victim's mother (and defendant's wife), Mrs. Adams, testified that on the day prior to the rape, the victim's grandmother informed her that she believed the defendant had had sexual contact with the victim on a prior occasion. Mrs. Adams stated that the child did not want her to go to work because the defendant "wanted to give her baths and take naps with her."
The State established at trial that the victim was with the defendant at the time of the offense. A chronology of observations of the defendant accompanied by the child reveals that the defendant was observed with the child at approximately 9:30 p. m. and 12:00 midnight on August 4, 1979 as well as 3:30 a. m., 7:30 a. m. and 12:00 noon on August 5, 1979. Mrs. Adams testified that she observed her husband, the defendant, with her daughter, who appeared uninjured, at 12:00 midnight on August 4, 1979 and noted that her husband appeared to be "angry and cold." She stated that she attempted to enter defendant's vehicle, however the defendant refused to let her in the automobile. Lake Charles Police Officer W. E. Bushnell testified that he observed the defendant accompanied by the victim at the Lake Charles Trailways Bus Station at 3:30 a. m. on August 5, 1979. He stated that the child was in the defendant's car crying and pleading to be taken home. At 7:30 a. m. on August 5, 1979, the defendant and the victim were again observed in the defendant's automobile which was parked on Opelousas Street in Lake Charles. Mr. John Lanclos testified that he approached the parked vehicle and noted the victim asleep in the backseat with "bloodstains all over her legs, her pants, and her hands...". According to Lanclos, the defendant was asleep in the front seat of the vehicle.
State's witness, sixteen year old Pamela Arabie, testified that she saw the defendant with the victim at 12:00 noon on August 5, 1979 when the defendant arrived at her trailer unexpectedly. Ms. Arabie stated that she immediately noticed the child's bloody condition and shortly thereafter gave the child a bath and dressed her in clean clothing. Pamela testified that she repeatedly suggested that the defendant take the child to the hospital to which the defendant replied that the child needed only to rest. Subsequently, a neighbor arrived at the trailer and questioned the young child regarding her injuries. In response to the neighbor's question as to who injured her, the victim replied that "daddy did it." The defendant was then persuaded by the neighbor to take the child to the hospital.
Sheriff's Deputy Bill Kwiatkowski testified that he was called to the hospital to investigate a report of an alleged rape and upon questioning the defendant he received vague answers by which the defendant disavowed any knowledge of the cause of the victim's injuries. The examining physician, Dr. Lehrue Stevens, testified that he, too, questioned the accused and that the accused related a very confusing story to him.
Dr. Stevens testified that he examined the child upon her arrival at the hospital and concluded that the "hymen at least was stretched or torn...". Further, Dr. Stevens stated that his final diagnosis was that "there is definite evidence of a recent vaginal penetration, and the findings are certainly... certainly consistent with rape in this young patient." Upon cross-examination, Dr. Stevens stated that the type of injury suffered by the victim could have possibly resulted from the insertion of an adult's finger into the child's vagina. Admittedly, the medical examinations of the victim were inconclusive due to the disturbed condition of the child and the victim's recent bath. However, as previously noted, when circumstantial evidence is utilized to prove the commission of an offense the test is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. We recognize the possibility that the victim's injuries could have been caused in a manner other than rape, however we conclude that such a possibility does not constitute a reasonable hypothesis when all of the evidence is considered. Further, in light of the numerous *1210 observations of the defendant with the victim throughout the crucial period during which the child was injured and after consideration of all the evidence, we conclude that the identity of the perpetrator was sufficiently established by the State at trial.
Defendant in his assignment of error alleges that the State failed to prove that Calcasieu Parish was the appropriate venue for trial. La.C.Cr.P. art. 611 provides that all trials shall take place in the parish where the offense has been committed unless a change of venue is obtained. This Court has held that in order for a conviction to stand, venue must be proved during the course of the trial. State v. Hollingworth, 292 So.2d 516 (La.1974). However, because venue is a special question, the scope of appellate review on that question is limited to determining whether there was some evidence, no matter how little, submitted to the jury to establish venue. State v. West, 319 So.2d 901 (La. 1975); State v. Rheams, 352 So.2d 615 (La. 1977). To sustain this proof, we have concluded that a trial court may take judicial notice of the fact that geographical locations mentioned by witnesses are within a particular parish, even if the parish is never specifically mentioned in the testimony. La.R.S. 15:422; State v. Batiste, 327 So.2d 420 (La.1976); Rheams, supra.
In the instant case, numerous witnesses reported seeing the defendant with the victim in and around Lake Charles, Louisiana, a city located in Calcasieu Parish, during the period of time at issue. Defendant in his statements to various persons indicated that he had driven to Shreveport or Vivian, Louisiana during the late evening of August 4th and early morning hours of August 5th. However, considering the number of times of those observations, it appears that any rational trier of fact would determine that venue was established by the State at trial. The jury obviously considered the virtual impossibility that the defendant could have made the approximately eight hour (round-trip) drive to Shreveport and still be observed in Lake Charles as frequently as the testimony received at trial indicated. Fully cognizant of the standard of review applicable to venue questions, we conclude that venue was sufficiently established at trial.
After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Defendant's assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 6
Defendant contends that the trial court erred in allowing Pamela Irene Adams, the defendant's wife, to testify against him at trial. The law applicable to the competency of a husband and wife to testify against each other in a criminal trial is embodied in La.R.S. 15:461 which provides in pertinent part:
"The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding, but;
(1) Private conversations between husband and wife shall be privileged.
(2) Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other."
This court has previously determined that this statute creates two distinct privileges. State v. Bennett, 357 So.2d 1136 (La.1978).
In the Bennett case, this Court stated:
"The first of these is the privilege which attaches to private conversations between husband and wife and which may be asserted by the defendant-spouse. Secondly, the statute establishes a privilege in favor of a spouse called to testify against the other spouse by providing that neither spouse shall be compelled to be a witness against the other in a criminal proceeding. The exercise of this privilege rests with the testifying spouse alone and may not be invoked by the defendant-spouse. The statute, however, does not prohibit a spouse from waiving this privilege and voluntarily taking the stand *1211 against the other spouse to testify to non-privileged evidence. State v. Triplett, 313 So.2d 227 (La.1975)."
Defendant alleges that the witness was reluctant to waive her general husband-wife testimonial privilege and did so without understanding the instructions of the trial court. A review of the record discloses that the trial judge and the prosecutor painstakingly explained to the witness that she had the right to refuse to testify against her husband. Repeatedly Mrs. Adams was asked if she understood her rights and if she desired to waive her right not to testify. Upon questioning, Mrs. Adams indicated that she wanted to testify in the interest of her daughter. In response to the State's question regarding whether her choice to testify was free and voluntary, Mrs. Adams answer affirmatively. After reviewing the record, we discern no evidence indicating that the witness waived her privilege without full knowledge as to her rights. On the contrary, the witness received a very careful, easily understood, and complete explanation of her rights and chose freely and voluntarily to waive the same. We conclude that defendant's assignment of error pertaining to Mrs. Adams' waiver of the general husband-wife testimonial privilege is without merit.
Defense counsel further contends that the trial court erred in allowing Mrs. Adams to testify regarding private conversations between herself and her husband. Defendant asserts that he, alone, may waive the testimonial privilege applicable to private communications between him and his wife. State v. Bennett, supra. The record discloses that the witness-spouse did make brief references during her testimony to private conversations between the defendant and herself, however, the content of those conversations were largely innocuous and to some extent, potentially exculpatory. In addition, we note that the record is devoid of any contemporaneous objection by defense counsel to the allegedly prejudicial testimony. It is well-settled that an appellate court is not required to reverse a judgment of conviction unless the trial court's error constitutes a substantial violation of the constitutional right or the accused has otherwise been prejudiced. State v. Hopper, 253 La. 439, 218 So.2d 551 (La. 1969), cert. denied, 90 S.Ct. 545, 396 U.S. 1012, 24 L.Ed.2d 504. We acknowledge the error on the part of the trial court, however, discern no prejudice against the accused as a result of that error. Therefore, we conclude that defendant's assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 13
Defendant contends that the trial court erred in denying his motion for a mistrial grounded upon an alleged non-responsive answer by a state witness. Defendant in this assignment of error refers to the following exchange between defense counsel and the witness:
"Q. Isn't ... isn't it correct that Miss... Miss Hungerford suggested that little Angie was ... was raped by her stepfather, Mr. Adams?
A. (No audible response.)
Q. Is ... isn't that correct?
A. What she told me?
Q No, did she say that in ... while you were in the bedroom? Did she suggest...
A. The little girl said it."
Immediately following Ms. Arabie's response, defense counsel asked to approach the Bench, thereafter, the Court called a brief recess. Following the recess, the trial judge instructed the jury to disregard both the question and the answer of the witness. Upon completion of Ms. Arabie's testimony, defense counsel moved for a mistrial based upon the alleged prejudicial effect of the witness' unsolicited remark. The trial judge denied defendant's motion.
La.C.Cr.P. 771 provides that when a remark made by a witness is of such a nature that it might create prejudice against the defendant in the mind of the jury, an admonishment or a mistrial may be warranted. It is well-settled that the declaration of a mistrial is a drastic remedy mandated only where substantial prejudice *1212 deprives the accused of a reasonable expectation of a fair trial. State v. Overton, 337 So.2d 1058 (La.1976); State v. Redfud, 325 So.2d 595 (La.1976). Further, this Court has held that a mistrial is not warranted if within the sound discretion of the trial court an admonition is sufficient to preserve the defendant's right to a fair trial. State v. Wesley, 347 So.2d 217 (La.1977); State v. Guillory, 340 So.2d 568 (La.1976). Obviously the trial judge determined that the circumstances of the instant case did not justify the declaration of a mistrial. After reviewing the record, we conclude that the trial judge did not abuse his discretion in denying defendant's motion, especially in view of our conclusion regarding assignment of error number 14. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 14
Defendant contends that the trial court erred in allowing State's witness, Patricia Hungerford, to testify regarding statements made to her by the victim. On direct examination, Ms. Hungerford testified that she asked the victim "who done (sic) this to her?". The witness stated that the child responded that "daddy did it". Defense counsel alleges that such testimony is inadmissible hearsay and so prejudicial as to mandate reversal of defendant's conviction. We cannot agree.
The trial judge admitted the witness' testimony pursuant to the res gestae exception to the hearsay rule. Res gestae is defined in La.R.S. 15:447 as events speaking for themselves under the immediate pressure of the occurrence through the instructive, impulsive, and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. That which forms part of the res gestae is always admissible in evidence. Defense counsel argues that the victim's statement does not constitute part of the res gestae as they occurred approximately eight to ten hours following the rape.
This Court has previously recognized that in prosecutions of sex offenses the better rule is that the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of the shocking episode and not a fabrication. State v. Pace, 301 So.2d 323 (La.1974); State v. Noble, 342 So.2d 170 (La.1977). In Noble, supra, the prosecutrix was a four year old child who made her statements identifying the perpetrator to her grandmother a full two days after the offense. The statement was held admissible because the circumstances indicated that the statement was made at the first opportunity the child had to speak to a close family member. In the instant case, there was a lapse of approximately eight to ten hours between the offense and the victim's statement to Ms. Hungerford. The record reflects that the victim's statement was the first complaint by the child concerning the perpetrator of the rape. Further, it was the first opportunity for the child to state the person who was responsible for her injury. There is no indication in the record that the child's statement was a product of fabrication, but rather, the circumstances reflect that the victim's response was merely a truthful answer to an adult's concerned inquiry. The child was upset and frightened and made her statement at the first reasonable opportunity under the particular facts and circumstances of this case. Accordingly, the trial judge did not err in allowing Ms. Hungerford to relate the child's statements concerning the identity of the offender. Defendant's assignment of error Number 14 is without merit.
ASSIGNMENT OF ERROR NUMBER 15
Defendant contends that the trial court erred in allowing the State to solicit opinion testimony from State's witness, Patricia Hungerford. The allegedly inadmissible testimony resulted from the following exchange between the State and the witness:
"Q. Okay. Being a mother, could you see a difference in the child when she was in the presence of this man?
A. Yes, she was scared of him." *1213 Defense counsel alleges that the questioning by the State called for an opinion as to the state of mind of the rape victim which allegedly resulted in the introduction of highly prejudicial testimony.
La.R.S. 15:463 states the general rule that a witness can testify only as to facts within his knowledge and may not testify as to any impression or opinion that he may have. While it is well-settled that a lay witness may not give opinion testimony, it has also been determined that where the subject of such testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences provided he also states the observed facts. State v. Roche, 341 So.2d 348 (La.1976) and cases cited therein.
In the instant case, the State questioned the witness regarding how the child reacted when the defendant was in the room with the victim. The witness responded that the child indicated that she desired to stay close to the witness and did not want to go near the defendant. These statements certainly provide an adequate factual basis for the witness' natural inference that the child was afraid of defendant.
The record reflects that defense counsel's objection to the question was sustained by the trial judge who immediately instructed the jury to disregard the question and answer. We conclude that the testimony was admissible since Ms. Hungerford's statement was a natural inference from her observation of the victim's behavior. Therefore, defendant's assignment of error is without error.
ASSIGNMENT OF ERROR NUMBER 21
Defendant contends that the trial court erred in denying his motion for a mistrial based upon a remark by State's witness, Elizabeth Thibodeaux, which referred to the defendant having spent time in a rehabilitation center. Defense counsel avers that the witness' statement made reference to inadmissible "other crimes" evidence. The alleged reference to "other crimes" occurred during the following exchange between the State and the witness:
"Q. Okay, What period of ... how long did they (victim and her mother) live with you during this marriage?
A. Up until he got out of Rehab."
Immediately after Ms. Thibodeaux's answer defense counsel moved for a mistrial which was denied by the trial judge.
La.C.Cr.P. art. 771 provides that if a witness makes a potentially prejudicial remark in front of the jury, the judge upon request of counsel shall admonish the jury to disregard the remark. A mistrial is justified only in those instances where the trial court in its discretion determines that an admonishment is insufficient to neutralize any prejudice resulting from the witness' statement. In the instant case, Ms. Thibodeaux's answer was extremely ambiguous. The record contains no evidence to substantiate defendant's contention that the term "rehab" referred to or was understood by the jury to refer to prior criminal activity. On the contrary, "rehab" could be interpreted to mean medical or mental hospitalization, physical therapy or even occupational rehabilitation. As previously noted herein, mistrial is a drastic remedy which is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of trial. State v. Overton, supra. In the present case, we discern no abuse of the trial court's discretion in its failure to declare a mistrial. In consideration of the ambiguity of the witness' statement, an admonition was clearly sufficient to negate any prejudice which may have resulted from the remark. Defendant's assignment of error is without merit.
We have carefully considered defendant's other assignments of error in light of the record, briefs, and arguments of counsel and conclude that such assignments are without merit being controlled by well-established principles of law.
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
*1214 LEMMON, J., concurs.
DIXON, C. J., concurs with reasons.
BLANCHE, J., concurs for reasons assigned by DIXON, C. J.
DIXON, Chief Justice (concurring).
I respectfully concur, but do not agree that this court approved "dry run voir dire" in change of venue hearings. Nor do I agree with the statement that "some evidence, no matter how little," is sufficient to prove venue.
NOTES
[*] Judges E. L. Guidry, Jr., J. Burton Foret and P. J. Laborde, of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] After the original date of sentencing, the trial court set aside the sentencing of defendant as a multiple offender; however, as mandated by La.R.S. 14:42, the sentence to life imprisonment without benefit of parole, probation or suspension of sentence was reimposed.
[2] Rape is defined in La.R.S. 14:41 as the act of anal or vaginal sexual intercourse with a male or female person, not the spouse of the offender, committed without lawful consent.