453 So.2d 1003 (1984)
STATE of Louisiana
v.
Roy GARAY.
No. KA-1746.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1984.
Rehearing Denied August 24, 1984.
*1004 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, E. Sue Bernie, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
George G. Angelus, New Orleans, for defendant-appellant.
Before GULOTTA, SCHOTT and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Roy Garay, was charged with the violation of La.R.S. 14:81, indecent behavior with a juvenile. After a bench trial, defendant was convicted as charged. Defendant was sentenced to serve three years, six months in the custody of the Department of Corrections. Defendant appeals his conviction, and we affirm.
To fulfill a course requirement for his studies in Early Childhood Education at Delgado Community College, defendant began doing volunteer work at St. Vincent's Infant Home in New Orleans. He began on February 28, 1983, and, for three weeks, worked at St. Vincent's on Mondays, Wednesdays and Fridays from 3:00 A.M. to 7:00 P.M. His duties were to assist the day care workers, primarily in general play activities, in Nursery Five, the nursery to which the victim, 5 year old Brenda, was assigned. Defendant was dismissed on March 21, 1981, because of suspected sexual improprieties with the victim, and because it had been discovered that defendant had been convicted of simple robbery and was on parole.
The state called as witnesses, the victim and three child care workers and a social worker from St. Vincent's, while the defense called defendant and defendant's mother.
*1005 Mary Dixon, a child care worker, testified that defendant spent an inappropriate amount of time at the nursery with Brenda, neglecting the other children, and that she expressed her concern over this to her supervisor, Dorothy Springs. Ms. Dixon testified that defendant spent a great deal of time holding Brenda on his lap. He did not hold her on his knees, but rather, sat her up close to him with her back against his chest, "close enough up to him so that she could rest her back against her chest, not leaning back." Ms. Dixon had told defendant not to let Brenda sit on his lap.
Irma York, another child care worker, testified that she frequently saw defendant holding Brenda on his lap with her back facing up to his stomach. She had reported her concern over this behavior to her supervisor, Dorothy Springs, four or five times.
Ms. York also testified that she found defendant and Brenda alone in the nursery bathroom three times. The first time, she had noticed that Brenda was not with the other children. Defendant had told Ms. York that he was going to take a break to have a cigarette. Ms. York went to the bathroom and found defendant seated on a children's shaver chair with his back to Brenda, who was standing over him, combing his hair. This occurred in the middle of March. The second time, Ms. York noticed that Brenda was missing and went to look for her in the bathroom. She found her alone with defendant in the bathroom, again combing defendant's hair. Defendant had not told Ms. York that he was going on a break. The third time, defendant had told Ms. York twice that he was going to go smoke a cigarette in the bathroom. As Brenda had told Ms. York that she had to use the bathroom, Ms. York sent Sonya Johnson, another child care worker, into the bathroom to check. She saw Sonya come out of the bathroom with defendant and Brenda. Ms. York also reported one of these incidents to her supervisor.
Ms. York stated that she never saw defendant off alone with any child other than Brenda, nor had she ever seen defendant in the bathroom having his hair combed by any other child.
Sonya Johnson, a child care worker, testified that defendant spent more time with Brenda than with any of the other children, and that Brenda sat on defendant's lap frequently. Ms. Johnson felt that the way defendant held Brenda on his lap, straddling him, was improper, and that a male volunteer should know better, especially with a child of Brenda's age.
Ms. Johnson saw defendant and Brenda alone in the bathroom one time. Ms. York had asked her to look for Brenda in the bathroom. When Ms. Johnson shut the nursery door behind her, defendant came out of the bathroom, looked at her, and went back in. When Ms. Johnson reported this to Ms. York, Ms. York sent her back into the bathroom. The bathroom door was closed. Brenda was inside, standing on a face bowl combing defendant's hair. She was wearing her sleeping apparel, a pajama top and underpants.
Brenda testified that defendant "put his thing up in me" five times. Each time she would be in the bathroom with defendant alone, wearing her sleeping apparel. She would comb defendant's hair, and then defendant would pull her underwear down on her legs. In her own words, Brenda explained that defendant would be behind her, and would put his "thing" up in her on the bottom of her behind, and it would hurt. She later agreed that a "thing" was a penis.
Brenda testified that she was sure that Sonya Johnson witnessed one such incident in the bathroom because Brenda heard someone coming and heard someone lean over the sink to look into the bathroom. Brenda said that Ms. Johnson went and told Irma. Brenda testified that the first person she told was Cheryl George, and that Dorothy Springs was present in the office at the time.
Because Cheryl George, a social worker and the coordinator of volunteers, did not work in the nurseries she did not have the opportunity to observe Brenda and defendant together. Ms. George brought Brenda *1006 and Ms. Springs into her office because she had heard that child care workers had heard Brenda making vague statements about defendant, and that "the workers never really sat down with her and asked her about it." Ms. George asked Brenda if defendant did something to her, and Brenda replied that defendant had taken her into the bathroom and put his thing in her, "down there."
Ms. George testified that she had told defendant during her interview that he was not to be left alone with an individual child.
Defendant testified that Brenda would seek him out and insist he hold her, pushing the other children away, and that she would become angry when he would not hold her. Defendant said that other children enjoyed combing his hair, both in the nursery and in the bathroom, where he always kept the door partially open. Defendant said that he got no sexual gratification from having Brenda sit on his lap and could not understand someone enjoying sex with children. Defendant said that he was never told it was improper to be in the bathroom along with Brenda or to let her sit on his lap.
Defendant stated that Brenda was lying to the court and that most of what the St. Vincent's workers testified was untruthful as well.
Defendant's mother testified that defendant was part of a large family and had never had problems with the young children in the family, and that defendant had various girlfriends.
On appeal, defendant alleges trial court error in: (1) denying defendant the opportunity for an independent psychiatric examination of the victim; (2) allowing hearsay testimony from Dorothy Springs (Cheryl George); and (3) convicting defendant, because the essential elements of the offense were not proved beyond a reasonable doubt.
ASSIGNMENT OF ERROR NO. 1:
Defendant moved for an independent psychiatric examination of Brenda by a licensed psychiatrist of defendant's choosing, asserting that this was the only way to determine whether Brenda's perception of the alleged events was not actually confused with prior sexual abuse by her natural father or suspected sexual abuse suffered in her foster home. This motion was refused, while defendant's alternative request, for access to all medical, psychiatric and social history reports of the victim from St. Vincent's, was granted on August 1, 1983.
On appeal, defendant contends that his constitutional rights to present an effective defense and to confront the witnesses against him were prejudiced by the trial court's denial of an independent psychiatric examination of Brenda. We disagree. Defendant was granted his alternative request. He received all records from St. Vincent's eighteen days before the trial. He was provided an opportunity to question Brenda regarding her ability to distinguish between prior sexual abuse and the present case when her competency to testify was considered immediately prior to the commencement of defendant's trial. The trial court carefully evaluated Brenda and concluded that she was a competent witness. That judgment deserves great weight. State v. Francis, 337 So.2d 487 (La.1976). Brenda's trial testimony demonstrated a clear recollection of the factual details of the recent incidents with defendant. See State v. Nails, 255 La. 1070, 234 So.2d 184 (1970). This recollection was distinct from that of experiences she had earlier in her home situations. Additionally, defendant was afforded the channel of cross-examination to further test the clarity of Brenda's recollection.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
Defendant contends that Cheryl George's testimony concerning a statement made to her by Brenda should have been excluded because it did not come under the hearsay exception allowing admission of early out-of-court statements of a child-victim of sex offense. Defendant asserts that as Ms. George herself stated that she had called *1007 Brenda into her office because rumors created by vague statements by Brenda had been circulating among the child care workers, Brenda's statement to Ms. George cannot be considered a "first complaint." Defendant further asserts that according to the Associated Catholic Charities' Preliminary Incident Report, made a part of the record, four to six days lapsed before Brenda's statement to Ms. George, and further, Ms. George stated in an interview included in the report that Dorothy Springs had informed her of "a specific allegation" on the afternoon of March 22, 1983.
An exception to the general rule of inadmissibility of hearsay, La.R.S. 15:434, exists for res gestae, defined as "events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive, and spontaneous words and acts of the participants, and not the words of the participants when narrating the events." La.R.S. 15:447. The Louisiana Supreme Court has repeatedly interpreted this provision to admit the original complaint of a young child when the particular facts and circumstances of the case indicate that it was a product of a shocking episode and not a fabrication. The original complaint of the young child is the statement made at the first reasonable opportunity under the particular facts and circumstances of the case. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Noble, 342 So.2d 170 (La.1977); State v. Pace, 301 So.2d 323 (La.1974). The four year old victim in Noble was raped by her mother's live-in boyfriend while her mother was away. Evidently her mother did not take notice of or denied what had happened and it was the victim's great-grandmother, who came to babysit two days later, who noticed the victim was bleeding profusely from the vaginal area and elicited the victim's statement. The court admitted the statement as it was "the four year old child's first opportunity to discuss the crime with a person whom she loved and trusted outside the atmosphere of her home where the accused had been living with her mother for several months." 342 So.2d at 173. The six year old victim in Pace was raped by a relative of her babysitter. The court considered that because "the victim was under the influence of the 24 year old defendant or persons closely related to him from the time of the occurrence until she returned home," 301 So.2d at 326, the statement made at her first opportunity to speak with her parents when she arrived home was admissible. In Adams, the five year old victim was asked by an adult woman, some ten hours after her rape, who had done it to her. The victim's statement identifying her stepfather was admitted because the court considered it made at the first opportunity the child had to speak with a friendly adult. The ten year old victim in Prestridge, raped by her mother's lover with her mother's approval, refused to answer her babysitter's questions about the incident, which the babysitter had partially overheard, and retired to bed. The following morning, upon the babysitter's prompting, the victim admitted she had been raped by Prestridge. The court admitted the statement.
A very young child raped by an adult standing in the position of parent, caretaker or friend cannot be expected to immediately come forward with a complete and exact report of the event. The courts have recognized that the child may be unable to speak about the incident until she considers herself safely in the presence of a compassionate adult whom she can trust. Because the child has no clear understanding of what has been done to her, her "original complaint" often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her.
Brenda apparently attempted to vaguely relate, either to her nurserymates or to the adults caring for her, defendant's sexually molesting her. The adults who heard her intimations and failed to take the time to reassure her, listen patiently, and help her draw out an account to the best of her five year old ability were clearly at fault. Their failure to take action, however, *1008 should not render inadmissible Brenda's statement to Ms. George, the first adult who actually took Brenda aside, reassured the child, and told Brenda that she wanted to hear what she had to say. We feel that Brenda's statement to Ms. George was made at the first reasonable opportunity under the particular facts and circumstances of the case, and was, therefore, properly admitted.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3:
Defendant argues that the evidence was insufficient to support the verdict. The statute, La.R.S. 14:81, reads in pertinent part:
Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person.
Upon viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded that defendant, at 26 years of age, committed a lewd or lascivious act upon the person of/or in the presence of five year old Brenda with the intent of arousing or gratifying the sexual desires of either person. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981). We further find that, assuming every fact to be proved that the circumstantial evidence presented in this case tends to prove every reasonable hypotheses of innocence is excluded. La.R.S. 15:438; State v. Wright, 445 So.2d 1198 (La.1984).
This assignment of error is without merit.
For the foregoing reasons, the conviction and sentence of defendant is AFFIRMED.
AFFIRMED.
SCHOTT, Judge concurring:
The majority correctly states the principle that the original complaint of a child, when the facts indicate that it was the product of a shocking episode and not a fabrication and when the statement was made at the first reasonable opportunity available to the child to speak to someone she trusted, is admissible under the res gestae exception to the hearsay rule. R.S. 15:447; State v. Prestridge, 399 So.2d 564 (La.1981); State v. Adams, 394 So.2d 1204 (La.1981); State v. Noble, 342 So.2d 170 (La.1977); State v. Pace, 301 So.2d 323 (La.1974). In State v. Anderson, 450 So.2d 684 (La.App. 4th Cir.1984) we found the statement of a nine year old girl to a social worker was inadmissible. The worker had removed the child from the defendant's home two days previously, placed the child in a foster home, and called the child two days later "to see how the situation was going" when the statement was made. We concluded that the state failed to prove that this was the child's first reasonable opportunity to make a complaint or that the complaint was the product of a shocking episode.
In the instant case the record is unclear as to the time lapse between the crime and the statement. Defendant worked at the home only a few hours each day so that the child had numerous opportunities to make her complaint. She knew several of the adult workers on a first name basis and was apparently close enough to them to confide in them on a spontaneous basis. She made her statement at a point considerably removed in time from the crime in an investigative setting where Ms. George called her in to question her about the rumors circulating at the home concerning defendant's conduct with the child. The statement was not the product of a shocking episode in the sense that it was a spontaneous declaration made while the child was in a state of shock soon after the occurrence of the episode. These facts stand in sharp contrast with those of State v. Noble, supra, as well as the other cases cited by the majority.
*1009 However, I reach the same result as the majority because I am convinced beyond a reasonable doubt that Ms. George's statement did not contribute to the trial judge's conclusion of defendant's guilt. Unlike State v. Banks, 439 So.2d 407 (La.1983) and State v. Anderson, supra, this case was tried to a judge, not a jury. Here the trial judge conducted a competency hearing before the trial and decided the child was competent to testify. He had to conclude that she knew what she was saying and could distinguish between right and wrong so as to tell the truth on the witness stand. The child testified without equivocation as to the crime and the corroborating circumstantial evidence of defendant's guilt was overwhelming. The conclusion is inescapable that had the trial judge not believed the child he would have acquitted the defendant. He had to consider Ms. George's testimony of what the child told her to be merely cumulative of the other evidence.
I concur in the result.