ARMSTRONG, Judge.
The defendant, Joseph Stamm, was charged by bill of information with molestation of a juvenile, a violation of La.R.S. 14:81.2. Following a bench trial the defendant was found guilty as charged. His motion for a new trial was denied and he was sentenced as a second offender to five years at hard labor. It is from this conviction and sentence that defendant now appeals.
Defendant responded to a plea by the Lutheran church he attended for adults to act as big brothers and big sisters and establish relationships with the children from the church affiliated residential treatment facility. After being interviewed defendant was accepted to act as a big brother and assigned to R.L., a nine year old male resident of that facility. Defendant completed six supervised on-campus visits and two unsupervised off-campus visits *86 with the child before being allowed to take him home for an overnight visit. The child accompanied defendant to his home on two overnight visits; December 20 to December 21 and January 3 to January 4.
Gwendolyn Richardson, supervisor of the facility, testified that on February 21, R.L. was scheduled to leave the center to go on his third overnight outing with the defendant. The child reported he did not want to go. Ms. Richardson telephoned the child’s social worker, Diane Gauthier, who spoke to the child over the telephone. Ms. Gauthier testified the child informed her that on the previous overnight visit the defendant “had done something bad in the shower,” and “had put his thing in his butt” while telling the child to read the shampoo bottle. Ms. Gauthier stated she assured the child that he would not have to go with the defendant when he arrived and reported the allegations to the police.
When the defendant arrived the child became angry, ran, hid under a bed and cried and the defendant was escorted out of the building. Pursuant to Ms. Gauthier’s report, Detective Joan Alexander of the New Orleans Police Department’s Child Abuse Unit took the child to Charity Hospital for an examination and then obtained an arrest warrant for the defendant. When she went to his residence, the defendant identified himself as Johnny Grant. He showed her around the house and told her that Joseph Stamm slept in the same bed with the boy when he slept over. The defendant later turned himself in.
Defendant argues that the trial court’s judgment contains two errors patent in that the verdict was not responsive to the charge and the sentence he was given was not legal. We deal with these arguments under assignments of error two and five, respectively.
In his first assignment of error the defendant complains that the trial court erred in allowing the state to elicit hearsay testimony from Ms. Gauthier as to statements made to her by the victim. The testimony of a third person of statements made by a victim is generally inadmissible as hearsay under former La.R.S. 15:434, now contained in L.C.E. article 802, but may be admissible under what was previously known as the res gestae exception of La.R.S. 15:447 now codified as L.C.E. article 801(D)(4). The Code states that such statements are not hearsay but “events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words of the participants when narrating the events.” Thus, res gestae does not usually extend to statements made sometime after the occurrence of the events. However, res gestae does apply to the original complaint of a child when the facts indicate that it was the product of a shocking episode and not a fabrication, and when the statement was made at the first reasonable opportunity available to the child to speak to someone he trusted.
In State v. Noble, 342 So.2d 170 (La. 1977), a four year old girl was raped by her mother’s live in boyfriend while the mother was on a short errand away from home. Upon her return the mother noticed that the child was unusually quiet and subdued. Two days later the child’s great-grandmother who was keeping her while the mother was doing some errands discovered that the child was bleeding profusely from the genital area. The great-grandmother had the child rushed to the hospital and while they were waiting for the child to be formally admitted the child told her great-grandmother what happened in response to questioning. The great-grandmother testified that she had an especially close relationship with the child. The court found that this was the first complaint of the child concerning the rape and it was made when the child was extremely upset and hysterical and at the child’s first opportunity to discuss the crime with someone she trusted outside the atmosphere of her home where the defendant was living with her mother.
In State v. Anderson, 450 So.2d 684 (La. App. 4th Cir.1984), writ den., 452 So.2d 696 (La.1984) a social worker for the Office of Human Development, placed the child and her two brothers in foster care when the defendant who was living with the children *87 and their mother called the office to have the children taken into custody because their mother had not returned home for two days. Two days after she picked the children up and placed them in the foster home the social worker called the child “to see how the situation was going” and the child told her “that just a couple of days before placement” the defendant raped her. The social worker reported this to the Child Abuse Unit which conducted an investigation beginning in November 1981 and leading to defendant’s arrest in December. This court found the evidence inadmissible hearsay and reversed:
In the instant case there was a time lapse of perhaps four days between the crime and the statement. There is no evidence that this child was upset when she made the statement or when Mrs. Smith picked up the child on July 4. Had this child been upset and made her statement to Mrs. Smith when she first picked her up the facts would be closer to Noble’s. Instead, we are faced here with an uncertain date of the crime, joined with an absence of an unusual frame of mind when the child is separated from the defendant, and a further lapse of at least one day and perhaps two days when the child makes the report in a telephone call to a social worker she had just met. We conclude that the state failed to prove that this was the child’s first reasonable opportunity to make the complaint or that the complaint was the product of a shocking episode. Therefore, Mrs. Smith’s testimony was inadmissible.
Nonetheless, defendant’s conviction will be affirmed if Mrs. Smith’s statement was merely cumulative of other evidence presented at the trial. For us to conclude that the admission of the statement constituted harmless error we must be able to conclude, beyond a reasonable doubt, that the improperly admitted hearsay did not contribute to the verdict. State v. Banks, 439 So.2d 407 (La.1983). This we are unable to do. The state called a physician who examined the child and found that her hymen was not intact, but he stated that it could have been broken from causes other than sexual intercourse. Thus, the only valid evidence left to support the conviction is the testimony of the child who was eleven at the time of the trial. On direct examination she testified that the defendant laid on top of her, pulled down her pants, unzipped and pulled down his pants and “put his weenie in my cat.” She explained that she meant sexual intercourse by reference to two dolls produced by the state. On cross examination she stated that she discussed her testimony with the prosecutor, Mrs. Smith, a detective, and “a lady I was living with before” and was told by them to tell the truth; but she also testified as follows:
Q. “Did they tell you how to testify today?
A. “Yes.
Q. “Did-at any time, did they go over and rehearse the testimony with you?
A. “Yes.
Q. "How many times? Was it a lot of times?
A. “I can’t remember.”
Surely Mrs. Smith’s testimony bolstered in the minds of the jurors the otherwise uncorroborated testimony of this little girl which was admittedly rehearsed by at least four adults. In addition, Mrs. Smith’s hearsay came before the child’s testimony so that the situation was similar to that in Bank’s where the hearsay “was the very first evidence that the state put on, and probably was of a lasting impression on the factfinder.” Banks at page 410.
Id. at 686.
In State v. Talplette, 519 So.2d 854 (La. App. 4th Cir.1988), a mother left her eighteen year old retarded daughter and her ten year old son in the custody of the defendant with whom she had been having a two year affair while she went to church. The daughter and the defendant exhibited unusual behavior when she returned, but she dismissed it. The defendant left the following morning and did not return. A week later, the daughter, upset and crying, approached the mother stating she had something to tell her but was afraid. Af *88 ter the mother comforted her, the daughter told her the defendant had raped her. She said she had been afraid to tell her sooner because the defendant threatened to punch her and her mother in the face if she told what happened. The defendant argued that the unexplained lapse of time of seven days precluded application of the res ges-tae exception. This court noted “[t]he traumatic condition of the child must also be considered in determining the res gestae or first reasonable opportunity for the child to tell his or her story. The initial complaint of a victimized child is often quite traumatic due to the fact that more often than not the abusive experience involved a close relative or friend.” Id. at 856. The court noted that the evidence strongly suggested that the victim was emotionally and mentally still a child. The court found that the victim’s low mental capacity and fear of the defendant, who came and went in the family home as he pleased, were convincing circumstances that the statement was made at the first reasonable opportunity to complain. The court further found that even if the statements were inadmissible hearsay, any prejudice was cured by the subsequent corroborating testimony of the victim and her brother. Importantly, the court found that the victim’s testimony was credible because she consistently and unhesitatingly stated that she knew the difference between the truth and a lie.
In State v. Gray, 502 So.2d 1114 (La. App. 4th Cir.1987), two children appeared at school with signs of having been severely physically abused. The daughter was unable to speak properly. She was immediately interviewed by a NOPD officer and two DHHR social workers. She was later interviewed again by the NOPD officer. This court found that all statements made at the second interview were inadmissible, but that any prejudice was cured by subsequent corroborating evidence and testimony.
In State v. Garay, 453 So.2d 1003 (La. App. 4th Cir.1984), the defendant began doing work at St. Vincent’s Home. During the month he worked there several other workers noticed he developed an unusually close relationship with a five year old girl and that much of his behavior toward her was improper. The child made several vague references to workers about incidents, but no one fully listened to her or questioned her. At some point, one of the workers took the child aside, reassured her and told her she wanted to hear what she had to say. This court found that under the circumstances the child’s statement was made at the first reasonable opportunity. Judge Schott concurred:
In the instant case the record is unclear as to the time lapse between the crime and the statement. Defendant worked at the home only a few hours each day so that the child had numerous opportunities to make her complaint. She knew several of the adult workers on a first name basis and was apparently close enough to them to confide in them on a spontaneous basis. She made her statement at a point considerably removed in time from the crime in an investigative setting where Ms. George called her in to question her about the rumors circulating at the home concerning defendant’s conduct with the child. The statement was not the product of a shocking episode in the sense that it was a spontaneous declaration made while the child was in a state of shock soon after the occurrence of the episode. These facts stand in sharp contrast with those of State v. Noble, supra, as well as the other cases cited by the majority.
However, I reach the same result as the majority because I am convinced beyond a reasonable doubt that Ms. George’s statement did not contribute to the trial judge’s conclusion of defendant’s guilt. Unlike State v. Banks, 439 So.2d 407 (La.1983) and State v. Anderson, supra, this case was tried to a judge, not a jury. Here the trial judge conducted a competency heáring before the trial and decided the child was competent to testify. He had to conclude that she knew what she was saying and could distinguish between right and wrong so as to tell the truth on the witness stand. The child testified with *89 out equivocation as to the crime and the corroborating circumstantial evidence of defendant’s guilt was overwhelming. The conclusion is inescapable that had the trial judge not believed the child he would have acquitted the defendant. He had to consider Ms. George’s testimony of what the child told her to be merely cumulative of the other evidence.
Id. at 1008-1009.
The issue of whether the victim’s statements to Ms. Gauthier in this case were made at the first reasonable opportunity merits close attention. Ms. Gauthier testified that she met with R.L. every week. The statements were not made until two months after the first alleged incident in her office, and one month after the second incident. Whether the statements were products of a shocking episode is not clear. Ms. Richardson testified that the child appeared nervous and apprehensive while waiting for the defendant. However there is evidence that the child telephoned defendant subsequent to his last overnight visit asking permission to come and see him.
We find that even if the statements were inadmissible as hearsay they did not contribute to the trial judge’s conclusion of defendant’s guilt. In his reasons for judgment, the trial judge found the victim to be a credible witness. The credibility of witnesses is for the trier of fact to determine. State v. Lee, 458 So.2d 533 (La.App. 4th Cir.1984). The boy repeated the statements he made to Ms. Gauthier on direct examination. He was cross-examined for nearly one hour. Moreover, defendant was tried by a judge, not a jury, which is a factor in considering the prejudicial effect of any third-party statements. Accordingly, any error made by the court was harmless.
In his second assignment of error, the defendant complains that the record is void of any formal, written judgment.
The Supreme Court of Louisiana has held that in a bench trial a judgment of guilty, pronounced by the judge on the record in open court and recorded in the minutes, is sufficient. State v. Weilbacher, 531 So.2d 456 (La.1988). The trial court in this case pronounced the defendant guilty in open court and the judgment was recorded in the minutes. This was sufficient; no written judgment was required.
The defendant also complains that the trial court erred in rendering his oral verdict without reference to a written list of responsive verdicts to the charged offense citing C.Cr.P. art. 809 [1].sa There is no indication C.Cr.P. art. 809 is to apply in a judge trial. If it did, the unreasonable result would be that the trial court would be required to write the responsive verdicts to himself and then give the list to himself.
The defendant also complains about the “confusion” of the verdict. After the trial, the judge gave a long discourse of his findings at the end of which he found the defendant guilty of indecent behavior with a juvenile. R.S. 14:81. The district attorney then pointed out that the defendant had been charged with molestation of a juvenile. The court said, “That’s correct, 81.2” these facts suggest that the trial court simply erred when he first referred to indecent behavior with a juvenile. This conclusion is supported by the fact that the minute entry reflects that the defendant was found guilty as charged and that he was sentenced under R.S. 14:81.2. These arguments are meritless.
In his third assignment of error, the defendant contends that the State did not present sufficient evidence to convict the defendant.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard for reviewing a claim of insufficient evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
*90 The essential elements of the crime of molestation of a juvenile, each of which the prosecution must prove beyond a reasonable doubt, are that the accused:
1. committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen.
2. was over the age of seventeen and more than two years older than the victim.
3. had the specific intent to arouse or gratify either the child’s sexual desires or his own sexual desires.
4. committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
State v. Leblanc, 506 So.2d 1197 (La.1987).
In the instant case the defendant was thirty-seven and the victim was nine. The victim testified that the defendant placed his penis against the victim’s anus apparently for the defendant’s gratification. The defendant was the child’s “Big Brother” and had complete supervision over the juvenile at the time of the offense. Indeed, Marcia Whittenburg, Administrator of the facility where the boy lived, testified that the defendant had complete authority over the boy while he was away from the facility. Although the defendant’s testimony conflicted with the victim’s, the trial judge in his reasons for judgment stated that he did not find the defendant’s testimony credible due to several inconsistencies. Credibility is an issue for the trier of fact. The facts appear sufficient to support the conviction. State v. Lee, supra.
By his fourth assignment of error defendant argues that the trial court erred in sentencing him under the wrong statute, but as discussed above, the trial court intended to find the defendant guilty as charged and sentenced him under the charged statute.
The defendant also complains that he was incorrectly sentenced under the enhanced sentencing provisions of La.R.S. 14:81.2(C) when the bill of information did not specifically charge him as having committed molestation while he was in control or supervision of the juvenile. There is no indication in the sentencing transcript that the defendant was sentenced under the enhanced penalty provision. This assignment lacks merit.
In his fifth and final assignment of error, the defendant argues that the trial court failed to comply with La.C.Cr.P. article 894.1 prior to sentencing. The defendant is correct in his assertion. The trial judge made absolutely no reference to the article. However, even where there is no compliance with article 894.1, the court will uphold the sentence if the record clearly illumines the choice. State v. Conger, 526 So.2d 431 (La.App. 4th Cir.1988). In this case, the minimum sentence the defendant could have received as a second offender was three and one-half years; the maximum was twenty years. His sentence of five years is not apparently severe. This assignment is meritless.
For the foregoing reasons, we affirm defendant’s conviction and sentence.
AFFIRMED.

. C.Cr.P. art. 809 provides:
After charging the jury, the judge shall give the jury a written list of the verdicts responsive to each offense charged, with each separately stated. The list shall be taken into the jury room for use by the jury during its deliberation.