484 So.2d 894 (1986)
STATE of Louisiana
v.
Claude SIMMONS, Sr.
No. KA 85 0846.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*895 Houston C. Goscon, III, Plaquemine, for State.
John E. Bride, Sunshine, for defendant-appellant.
Before GROVER L. COVINGTON, C.J. and WATKINS and SHORTESS, JJ.
GROVER L. COVINGTON, Chief Judge.
Claude Simmons, Sr., was charged by bill of information with cruelty to a juvenile, a violation of La.R.S. 14:93. Defendant pled not guilty and, after waiving his right to a jury trial, was tried by judge alone and found guilty as charged. Defendant was subsequently charged, adjudged and sentenced as a Third Felony Habitual Offender. The court sentenced defendant to be confined for a term of ten years at hard labor.
Defendant brings this appeal urging four assignments of error, to wit:
1. The trial court erred by denying defense counsel's objection to hearsay testimony given by the victim's grandmother.
2. The trial court erred by allowing hearsay testimony of the victim's mother into evidence.
3. The trial court's verdict was contrary to the law and the evidence.
4. The trial court erred by imposing an excessive sentence.[1]
For the reasons hereinafter provided, we affirm the conviction and sentence.

SUMMARY OF TESTIMONY
The victim's maternal grandmother testified that defendant had been married to her daughter but they have subsequently divorced. They had two children, the victim, a nine year old girl, and a son. On or about November 25, 1984, (the Sunday following Thanksgiving) the victim was in Plaquemine, Louisiana, visiting with defendant. On the Wednesday before Thanksgiving, defendant came to the grandmother's house in Baton Rouge to get the children, after having received permission from the victim's mother to have the children visit with him over the Thanksgiving holidays.
He returned the children on the following Sunday (November 25). The grandmother testified that when defendant returned the victim, she got out of the car slowly and walked in a stiff manner and was holding her stomach. While defendant, the victim, and the victim's mother and grandmother were together on the porch, the mother and grandmother asked the victim, "What's the matter?" The victim at that time replied, "Nothing."
On the following Monday, Tuesday and Wednesday, the victim was permitted to stay home from school because of her complaints that her stomach hurt her. Then, on Thursday, while sitting next to her grandmother, the victim told her that defendant had tried to rape her. At this point, the grandmother called the victim's mother into the room. Initially, the victim would not tell the grandmother what had been done to her, but in response to the mother's questioning the victim explained herself.
The grandmother testified that the victim told them that defendant had entered the *896 room, at her aunt's house, where she and her little cousin were sleeping. The little cousin remained asleep. Defendant woke the victim and placed a clothes hanger around her neck and told her to come with him after he pulled down her underpants. Defendant took the victim into the living room, turned off the lights, put her in his lap and started "using his finger." The victim told them that every time she tried to awaken her brother, who was asleep in the living room, defendant pulled her back to him and squeezed her stomach. Then, the victim's aunt knocked on the door and defendant, without turning on the lights, opened the door for her aunt to come inside while he held the clothes hanger behind his back. Defendant told the victim that she "better not tell" her grandmother or mother what had happened or something worse would happen the next time she came to visit him.
The grandmother further testified that, after the victim had given her account of the incident, she and the victim's mother took the victim into another room to examine her. They removed her pants and placed her on a bed. The grandmother began touching the victim's stomach, but the victim could not stand it. She began crying. The stomach was "kind of swollen." There was a pinkish discoloration in the victim's underpants.
The victim's mother testified that the victim acted unusual after defendant returned her and that she was holding her stomach. Her testimony corroborated the grandmother's, that the victim did not make any disclosure concerning the occurrence of the instant incident until the Thursday after her return. The mother's account of the victim's disclosure of the details of the incident essentially corroborated that of the grandmother. She too testified as to the existence of the stain in the victim's underpants. On the same day the victim made the disclosure, her mother took her to the hospital where she was examined by a doctor. Hospital personnel contacted the office of Child Protection.
The mother testified that the victim was not able to attend school for a week following her return home and has acted differently since the incident occurred. She awakens early in the morning, cries in her sleep and has nightmares.
The victim testified that defendant had, on the date in question, pulled down her underpants and "played under [her] clothes... with his finger," and had placed a clothes hanger around her neck. He had also squeezed her stomach. She also testified that her aunt had left the house while the incident was happening. When defendant took her back to her mother's house, she was hurting between her legs and in her stomach. Defendant "played hard." She stated that she had missed school because she was in pain from the incident.
John C. Blanchard, a detective with the Iberville Parish Sheriff's Office, investigated the incident and arrested defendant following the lodging of a complaint by the victim's mother. At the time of his arrest, defendant was advised of his constitutional rights.
ASSIGNMENTS OF ERROR NOS. 1 AND 2:
By means of these assigned errors, defendant contends that the trial court erred by allowing the victim's grandmother and mother to each testify as to the disclosure made by the victim regarding the instant offense. Defendant argues that the testimony constituted inadmissible hearsay evidence which was damaging to him and should have been excluded. The state contends that the testimony falls within the purview of the exception to the hearsay rule which provides for the admission into evidence of such testimony as the original complaint of a young child sex offense victim.
The testimony of the victim's grandmother and mother repeating what the victim told them constitutes hearsay because the testimony of each is an out of court, unsworn statement of a third person offered for the truth of its content. State v. Elzie, 351 So.2d 1174 (La.1977).
*897 However, in prosecutions for sex offenses, the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of the shocking episode and not a fabrication. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Noble, 342 So.2d 170 (La.1977); State v. Ohrberg, 448 So.2d 1316 (La.App. 1st Cir. 1984).
In State v. Garay, 453 So.2d 1003, 1007 (La.App. 4th Cir.1984), our brothers of the Fourth Circuit stated:
A very young child raped by an adult standing in the position of parent, caretaker or friend cannot be expected to immediately come forward with a complete and exact report of the event. The courts have recognized that the child may be unable to speak about the incident until she considers herself safely in the presence of a compassionate adult whom she can trust. Because the child has no clear understanding of what has been done to her, her "original complaint" often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her.
Similarly, the nine year old child victim in the instant case could not be expected to immediately come forward and make a disclosure or first complaint of the acts of sexual abuse and cruelty to which she had been subjected. The victim's own testimony indicates that she was no doubt terribly shocked, traumatized and frightened to be victimized through such an episode by her own father. She testified that the reason she waited so long before telling what had occurred was because she was scared. She testified that defendant had made a specific threat that if she told her grandmother or mother (the very adult family members in whom she eventually confided) what had happened that he would do her greater harm the next time.
Considering the particular facts and circumstances of the instant case and specifically the threat that had been made, the child's waiting four days until she made her disclosure is of no consequence. The record shows that defendant came back the day after he returned the victim to her mother, ostensibly to see how the victim was getting along, which was unusual. Ordinarily, he would not return until the children were ready to visit him again within three or four weeks.
Under these circumstances the victim's original complaint might have been further delayed. The record indicates that the disclosure was a product of the shocking episode and not a fabrication. Additionally, the testimony of the grandmother, mother and defendant himself indicates that the victim had not fabricated stories in the past.
Under these particular facts and circumstances, we find that the testimony of the grandmother and mother, repeating the disclosure of the victim relative to the instant offense, constituted the original or first complaint of the victim, rendering that testimony admissible into evidence. Therefore, the trial court's ruling was entirely proper. Moreover, even assuming arguendo that the testimony was inadmissible hearsay, the testimony was cumulative, tended only to corroborate the victim's own testimony and did not prejudice the defendant.
These assignments therefore lack merit.
ASSIGNMENT OF ERROR NO. 3:
By means of this assigned error, defendant asserts that the verdict was contrary to the law and the evidence. Defendant argues that the evidence was insufficient to convict him of cruelty to a juvenile because the state failed to prove an element of the offense, i.e. that "unjustifiable pain or suffering" was caused to the child.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not indicate defendant made such a motion. A reviewing court, in spite of defendant's failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional *898 standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (La. 1979), now codified in art. 821. State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984). The standard set forth in art. 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
La.R.S. 14:93 A provides:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
The victim's testimony established that, while she was asleep with her little cousin, defendant awakened her initially to attend to her aunt's baby. Thereafter, he pulled down her pants and "played under [her] clothes" with his finger. She specifically stated that he had "played hard". He placed a clothes hanger around her neck and squeezed her with it "a little bit" and also hurt her by squeezing her stomach. Additionally, he told her that if she told her grandmother or mother what happened that he would harm her more the next time.
The mother, grandmother and the victim all testified that the victim could not attend school for the entire week following the occurrence of the incident. The victim testified that she was hurting "between [her] legs" and in her stomach, rendering her unable to attend school.
The testimony of the grandmother and mother, who examined the victim after she disclosed the occurrence of the incident to them, corroborates the victim's testimony. They each testified that the victim's underpants contained a stain, which the grandmother described as "kind of pinky red, not red red, kind of pinky color". The grandmother also testified that, at the time she examined the victim, she touched the victim's stomach in the process but the victim could not stand it and began crying. She also stated that the victim's stomach was "kind of swollen a little bit".
Defendant, the thirty-four year old father of the victim, took the stand in his own defense and denied having physically attacked or having otherwise done anything to the victim during her visit with him over the Thanksgiving holidays.
After viewing the evidence in the light most favorable to the state, we find that any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.
In rendering its judgment, the trial court stated that, in hearing the testimony of the victim, it was impressed by the fact that she was candid in all her answers and spoke without hesitation and that it believed the testimony of the mother and grandmother. The trial court chose to believe their testimony and not that of defendant. In State v. Mullins, 464 So.2d 459, 463 (La.App. 1st Cir.1985), this Court stated the following:
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. [State v.] Korman, 439 So.2d [1099], at 1101 [(La.App. 1st Cir.1983)]. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as "thirteenth juror" in assessing what weight to give evidence in criminal casesthat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, *899 the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir. 1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984).
The evidence of record is clearly sufficient to support the trial court's judgment.
This assignment is without merit.
For the aforestated reasons, the conviction and sentence by the district court are affirmed.
AFFIRMED.
NOTES
[1] This assignment of error was not briefed and is therefore considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.