KING, Judge.
This appeal presents for review in a juvenile proceeding the issues of whether or not the trial court improperly admitted hearsay evidence at the adjudicatory hearing and whether or not the trial court imposed an excessive judgment of disposition.
Fletcher David Burt (hereinafter the juvenile), a child over thirteen years of age, was adjudicated a delinquent child, within the meaning of C.J.P. Art. 13(7) and (12), on July 31, 1987. The juvenile was found to have committed two counts of sexual battery, in violation of La.R.S. 14:43.1(A), and two counts of aggravated oral sexual battery, in violation of La.R.S. 14:43.4(A). At a dispositional hearing, a judgment was rendered committing the juvenile to the custody of the Louisiana Department of Public Safety and Corrections until his twenty-first birthday. The juvenile seeks a review of his adjudication and his judgment of disposition urging two assignments of error. We affirm.
FACTS
The juvenile was found to have committed the offenses of forcing his eight year old twin niece and nephew to submit to his sexual advances. The two victims resided with the juvenile and his parents, who are the victims’ grandparents, at the time the offenses were committed. Both victims testified that the juvenile threatened to physically harm them if they did not cooperate. Each victim stated that they were forced to perform these acts on several different occasions.
The trial court ordered and considered a predisposition investigation and report and held a dispositional hearing before rendering a judgment of disposition committing the juvenile. The predispositional investigation and report was compiled by juvenile probation officer Curtis R. Baca who reported that the juvenile continued to deny that he had committed the offenses, even after the adjudication hearing. The juvenile’s mother also continued to deny that her son had committed the offenses. Because of this, Baca felt the juvenile could not be rehabilitated in his home. Baca also pointed out that since the adjudication hearing, the juvenile had been taken into custody on two shoplifting offenses involving cigarettes. The juvenile denied committing one of the offenses but admitted to committing the other.
ASSIGNMENT OF ERROR NUMBER ONE
The juvenile contends in this assignment of error that the court improperly allowed hearsay evidence to be admitted at the adjudicatory hearing. Specifically, the juvenile argues that testimony by the victim’s mother, aunt, and uncle as to statements made by the female victim was inadmissible hearsay. We note that La.C.J.P. Art. 71, in effect at the time of the adjudicatory hearing of the juvenile, provided that the adjudication hearing in a delinquency proceeding shall be conducted according to the rules of evidence applicable to civil proceedings.[1] However, in view of the subsequent legislative history and considering that the rules of evidence in criminal proceedings in effect at the time of the juvenile’s adjudicatory hearing were more *933 rigorous than in civil proceedings, we choose to apply the more stringent criminal rules of evidence to our consideration of the alleged evidentiary errors committed in the juvenile’s adjudicatory hearing.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Shoemaker, 500 So.2d 385 (La.1987); State v. Martin, 356 So.2d 1370 (La.1978).
La.R.S. 15:434 states that hearsay evidence is inadmissible, except as otherwise provided by law. La.R.S. 15:447 and 15:448,[2] provided that:
“Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.” La.R.S. 15:447.
“To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.” La.R.S. 15:448.
The Louisiana Supreme Court has repeatedly interpreted these provisions to allow hearsay testimony in criminal cases of the original complaint . made by a young child who is the victim of a sex crime. The complaint of the child must be such that, given the particular facts and circumstances of the case, the child made the complaint at the first reasonable opportunity. The complaint is admissible when the particular facts and circumstances indicate that it was the product of the shocking episode, rather than a fabrication. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Noble, 342 So.2d 170 (La.1977); State v. Pace, 301 So.2d 323 (La.1974).
The victims in this case were approximately eight years old at the time of the adjudicatory hearing. Apparently the children were molested by the juvenile over a period of at least one year prior to January, 1987, which was when the victims were removed from the grandparents’ home by their mother. The victims had lived with their grandparents for a period of two to three years. The victims’ mother testified that she removed the victims because of complaints that they had been “living in filth” and were not being properly cleaned or fed. Sometime in February, 1987, the children were sent to live with their uncle, John Fred Burt III, and their aunt, Jackie Lynn Burt. The first complaint of sexual offenses was apparently made by the female victim to her aunt in late February, 1987, at the urging of one of her cousins.
The complaint of the child took place about one month after the last offensive contact between the juvenile and his victims. As noted in State v. Hookfin, 476 So.2d 481, at page 489 (La.App. 1 Cir.1985):
“The lapse of time between the first opportunity for the victim to make the complaint and the making of the complaint itself seems to be the key factor in deciding whether such statement is admissible. Where the statement is made by the victim at the first opportunity to do so safely, the court has held that such statement is admissible.”
In deciding what is the first safe opportunity for such a complaint, courts have considered that:
“A very young child raped by an adult standing in the position of parent, caretaker or friend cannot be expected to immediately come forward with a complete and exact report of the event. The courts have recognized that the child may be unable to speak about the incident until she considers herself safely in the presence of a compassionate adult whom she can trust. Because the child has no clear understanding of what has *934 been done to her, her 'original complaint’ often consists of responses to the questioning of a patient, persistent adult who draws the child’s story from her.” State v. Simmons, 484 So.2d 894, at page 897 (La.App. 1 Cir.1986).
See also, State v. Garay, 453 So.2d 1003, at page 1007 (La.App. 4 Cir.1984).
In Simmons, supra, the nine year old victim of sexual abuse waited four days to tell her mother and grandmother about her father’s sexual abuse during visitation. In Hookfin, supra, the five year old and seven year old rape victims waited several weeks to tell their grandmother about the sexual abuse by their mother’s boyfriend. In both of these cases, the hearsay testimony of the relative was admitted since the child’s complaint was a product of a shocking episode and not a fabrication. In Ga-ray, supra, the five year old child made vague statements to various volunteer childcare workers about the defendant’s mistreatment of her during a period of three weeks after the defendant began to work at her daycare center. However, the first “specific allegation” was not made until the day after defendant’s dismissal when the coordinator of the volunteers brought the child into her office, reassured her, and listened to what she had to say. The court found the child’s statements were admissible because “the adults who heard her intimations and failed to take time to reassure her, listen patiently, and help her draw out an account to the best of a five year old’s ability were clearly at fault.”
Considering the particular facts and circumstances of the instant case, the delay by the victims seems to have been justified. The victims had lived with the juvenile, his parents, and the juvenile’s sisters for about three years. The testimony of the children shows that the juvenile had authority to punish the children for misbehaving and would sometimes hit them for not obeying him or their grandparents. The juvenile was, to the children, an “adult” in the position of a person who exercised authority over them. The victims were thus justified in being frightened that the juvenile would carry out any threats made to persuade them to perform these sexual acts. The actions of the grandmother (the juvenile’s mother) in denying the occurrences further justified the inaction of the victims. The female victim stated that she generally told her grandmother what had happened to her. Yet, even after the adjudication hearing, the grandmother continued to disbelieve the victims’ version of what had happened. The victims were discouraged from voicing their complaints, since their complaints were dismissed as a fabrication and given no attention at all.
More importantly, the record shows that the victims had been subjected to previous sexual abuse by their stepfather. The record shows that when the female victim reported these occurrences, her grandfather took no action and her mother denounced the girl as a liar to the grandparents and aunts. This would further explain any hesitancy on the part of the victims in complaining to their mother or grandparents or anyone with whom they resided. One of the aunts who lived with the children at their grandparents testified that the female victim denied being molested when questioned if “anybody [was] messing with [her] down there?” However, this questioning occurred in the home where the offenses took place and where the girl’s previous complaints as to her stepfather’s sexual advances had been ignored and denounced as lies. It thus appears when the first complaint was made, the children were safely away from the juvenile and their mother’s and grandparents’ homes for the first time after the last molestation and in the presence of an adult they could trust and confide in. Accordingly, we find the hearsay statements of the victims to their mother, aunt, and uncle were properly admitted at the juvenile’s adjudicatory hearing under the original complaint exception to the hearsay rule.
It should also be noted that the testimony of Jackie Lynn Burt, was not objected to at the adjudicatory hearing. La. C.Cr.P. Art. 841 provides that:
“An irregularity or error cannot be availed of after verdict unless it was *935 objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.”
We find that any error on the part of the trial court in admitting the aunt’s testimony was waived by the juvenile. Moreover, it appears that the testimony of the mother, the aunt, and the uncle was all merely cumulative and corroborative to that given by the victims themselves. Therefore, even if their statements were improperly introduced, the admission was harmless error. For thse reasons this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
The juvenile contends in this assignment of error that the trial court erred in imposing an unconstitutionally excessive judgment of disposition in committing him until his twenty-first birthday. Article 1, § 20 of the 1974 Louisiana Constitution and Art. 86 of the La.CJ.P. prohibits the imposition of excessive punishment.
For a judgment of disposition to be excessive, we find that the penalty must be so grossly disproportionate to the offense committed, in light of the harm caused to society, as to shock our sense of justice. Cf. State v. Cann, 471 So.2d 701 (La.1985); State v. Bonanno, 384 So.2d 355 (La.1980). We also find that a judgment of disposition, though within the statutory limits, may still violate the juvenile’s constitutional right against excessive punishment. Cf. State v. Sepulvado, 367 So.2d 762 (La. 1979).
La.C.J.P. Art. 83(A)(4)(a) provides that:
“In cases in which a child has been adjudicated a delinquent the court may:
******
Commit a child adjudicated delinquent, and thirteen years of age or older at the time of the commission of the delinquent act or acts, to the custody of the Department of Public Safety and Corrections;”
La.C.J.P. Art. 89(F)(1) also provides that: “In delinquency proceedings, a judgment of disposition shall not remain in force after a child reaches his twenty-first birthday.” The judgment of disposition for the commitment of the juvenile in this case was therefore within the limits statutorily mandated.
The guidelines for determining a disposition for a juvenile case are found in La.C. J.P. Art. 86(A), which provide that:
“The court should impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.”
Much discretion is granted to the court because of the special nature of the juvenile proceedings, but the court must balance the needs of the child with the best interest of society. State In Interest of Garner, 484 So.2d 149 (La.App. 3 Cir.1986).
Considering the circumstances of this case, we cannot find the trial court abused its discretion in rendering a judgment of disposition committing the juvenile until his twenty-first birthday. Although remaining with his parents would be a less restrictive alternative, the circumstances weigh against such a disposition. The offenses were very serious and were offenses in which the juvenile made physical threats against his young victims. The fact that his mother refuses to recognize the problem and the juvenile has continued to exhibit delinquent behavior since his adjudication as a delinquent is an indication that his rehabilitative needs can not be met at home. The juvenile’s welfare and the safety of society would be better served if he is placed in a structured environment where his actions can be closely monitored.
The juvenile argues that there is no real danger that the incident will recur because *936 the victims no longer reside with his parents. However, the testimony of one of the children’s aunts, who still resides with the juvenile’s parents, shows that other young children are still present in the home. Defense counsel urged that allowing the juvenile to remain in the home with his parents would be a less restrictive disposition and that the court should give this consideration. However, the possibility of other young children still being present in the home makes this disposition inadvisable.
It should also be noted that the juvenile has not been committed for a fixed period of time. The trial court merely fixed the statutorily mandated maximum sentence, which is until the juvenile reaches the age of twenty-one. If rehabilitation efforts with the juvenile are successful, the possibility exists that the juvenile could be released prior to his twenty-first birthday. Had the juvenile been an adult at the time of the delinquent acts, he could have been sentenced to a total of sixty years for the same offenses. Since he was sentenced as a juvenile, the longest time that the juvenile can remain in custody is a little more than four years. This judgment of disposition is not so grossly disproportionate to the offenses committed, in light of the harm caused to society, as to shock our sense of justice. We find the trial judge adequately balanced the needs of the juvenile with the best interest of society in determining that the judgment of disposition for the juvenile in this matter would be to order him committed until his twenty-first birthday. This assignment of error is also without merit.
For the foregoing reasons, defendant’s adjudication and judgment of disposition are affirmed.
AFFIRMED.

. This statute, in effect at the time of the adjudicatory hearing in this matter, has been repealed by Acts 1988, 2nd Ex. Sess., No. 7, § 2, eff. January 1, 1989, and now provides that delinquency proceedings shall be conducted according to the rules of evidence applicable to criminal proceedings.

. These statutes were in effect at the time of the adjudicatory hearing in this matter, however, they have been repealed by Acts 1988, No. 515, § 8, eff. January 1, 1989 (§ 1 of which enacts the Louisiana Code of Evidence).